[Civ. No. 35. Fifth Dist. Mar. 22, 1962.]

CECIL W. PASCOE, Plaintiff and Appellant, v. JACK L. RICHARDS, Defendant and Respondent.

Savage & Shepard and H. A. Savage for Plaintiff and Appellant.

George E. Danielson and H. H. Slate for Defendant and Respondent.

BROWN, J.—Plaintiff commenced this action to quiet his title to four lode mining claims known as Barite Star 1, Barite Star 2, Barite Star 3 and Barite Star 4, all situated in a wilderness area in Tulare County. Defendant answered, denying plaintiff's allegation of ownership and claimed title in himself to Barite Star 2, 3 and 4, by virtue of prior lode locations designated as Baro 1, Baro 2 and Baro 3, respectively. He also filed a cross-complaint to quiet his title to the three Baro claims. Each of plaintiff's Barite Star 2, 3 and 4 cover substantially, but not exactly, the same area as each of defendant's Baro 1, 2 and 3, respectively. The mineral involved is barite.

Barite Star 1 is not in dispute except insofar as it may overlap the area of Baro 1 claimed by defendant. As to the remaining three claims, we adopt defendant's designation of Baro 1, Baro 2 and Baro 3, as did the parties in the court below.

Upon a nonjury trial, judgment was for defendant. Plaintiff's motion to reopen made prior to entry of formal judgment was granted and further trial proceedings were had. The court then made findings to the effect that defendant located the three mining claims, performed and completed the discovery work required by law, performed and completed annual labor and assessment work required by law; at the time of the purported location by plaintiff the three Baro claims were not open or subject to valid locations; defendant

is the owner of the three mining claims; and that plaintiff take nothing by his complaint. By the judgment it was decreed that defendant was the owner and entitled to the possession of the three mining claims, Baro 1, Baro 2 and Baro 3, and that his title thereto be quieted as against the adverse claim of plaintiff. Plaintiff's motion for a new trial was denied. He now appeals from the judgment.

Plaintiff specifies four grounds of error: (1) error in finding that the location and discovery work on defendant's claims was invalid; (2) error in finding that defendant performed the annual assessment work during the mining year prior to location by plaintiff; (3) error in failing to quiet title in plaintiff to Barite Star 1; and (4) error in denying plaintiff's motion for a new trial.

In presenting his appeal to this court, plaintiff has liberally sprinkled his briefs with alleged evidentiary facts, attacks on the credibility of defense witnesses and arguments as to the weight we should give testimony. He claims that some of the defense witnesses were interested parties by reason of association with, or relationship to, the defendant, and therefore, their testimony may have been partisan. This type of argument is more properly addressed to the trial court. It is valueless to a reviewing court which must be guided by oft repeated rules of appellate evidentiary review. These rules are: In reviewing the evidence an appellate court must resolve all conflicts in favor of the findings and must indulge in all reasonable inferences to uphold the judgment, if possible (*Butler* v. *Nepple,* 54 Cal.2d 589 [6 Cal.Rptr. 767, 354 P.2d 239]). Where there is a conflict in the testimony, the trial court's determination of that conflict is conclusive on appeal (*Luz* v. *Lopes,* 55 Cal.2d 54 [10 Cal.Rptr. 161, 358 P.2d 289]). When a judgment is attacked as being unsupported, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact (*Key* v. *McCabe,* 54 Cal.2d 736 [8 Cal.Rptr. 425, 356 P.2d 169]).

With these principles in mind, we turn to the record to determine whether there is substantial evidence to support the challenged findings. The answer to our inquiry is in the affirmative.

### The Facts

In July 1953 defendant located lode mining claims Baro 1 and Baro 2 on Paloma Ridge in the County of Tulare. Monu-

ments were erected, discovery excavations were made, and notices of location were recorded. The lode mining claim relating to Baro 2 failed to specify that the required discovery work was done. In 1956 defendant recorded an affidavit correcting the claimed oversight. In May 1954 defendant located lode mining claim Baro 3. A monument was erected, a discovery excavation was made, and notice of location recorded.

In June 1956 defendant granted an oral option on the claims to Macco Corporation, through Jim Hawkins, general manager of its Drilling Fluid Division. On July 17, 1956, Harry Parker, Macco's superintendent, took miners and necessary equipment to the claims, and bulldozed a path on top of the claims, removed overburden and test-drilled.

On June 18, 1957, one Emery L. Bales and one Kenneth Wortley commenced an action against defendant in this action, seeking to quiet title to all three claims. There is voluminous testimony to the effect that plaintiff here, knew of that action, participated in it, although not as a named party, and appeared as plaintiffs' witness at the trial. There was a judgment for defendant.

In August 1958 plaintiff, with knowledge of Macco's interest in the claims, went to Paloma Ridge and there purported to locate four claims, building monuments and posting and recording notices. Kenneth Wortley, for a money consideration, did the discovery excavation work for plaintiff.

On April 21, 1959, plaintiff commenced this action. Throughout the pleading stage and trial, he was represented by the same attorney who had represented Wortley and Bales in their prior unsuccessful quiet title action. That attorney is not plaintiff's counsel on this appeal.

### Location and Discovery Work

Plaintiff urges that defendant did not make valid locations on the three Baro claims and hence his claims were invalid *ab initio* and the land remained a part of the public domain, open to location by plaintiff. The first prong of his argument is that defendant did not comply with the provisions of section 2304 of the Public Resources Code, which provides that, within 90 days after date of location of a lode mining claim, the locator shall sink a discovery shaft to a depth of 10 feet from its lowest rim at the surface, or shall drive a tunnel, adit or open cut to at least 10 feet below the surface. Defendant testified that, assisted by one Ivan Swartout, he dug 10-foot discovery holes which were open cuts on

the face of the barite vein on Baro 1 and Baro 2 in July 1953, and on Baro 3 in 1954. Swartout corroborated defendant's testimony in detail. David L. Walther, defendant's son-in-law, testified that in 1954 the execavations were more than 10 feet deep. Harry C. Parker, Macco's superintendent, testified that in 1956 the excavation on Baro 1 was over 10 feet deep; Baro 2 was 5 or 6 feet deep but had fallen in and eroded; and Baro 3 was similar in appearance to Baro 2. George Latham, engaged in mining all of his life, testified he had seen "hundreds" of discovery holes; that he visited the claims in 1956, 1957, 1958 and 1960, and all three excavations were legal holes, over 10 feet deep. There was other testimony tending to show the excavations were of legal depth. It is true that plaintiff's witnesses, all of whom viewed the claims in subsequent years, testified to the contrary. The trial court rejected plaintiff's testimony and accepted the defense testimony, which it had a right to do.

The second prong of plaintiff's contention is that defendant's location on Baro 1 is invalid because he adopted an abandoned discovery hole of one James or Clark as his own discovery work. The relevant portion of section 2306 of the Public Resources Code provides that a relocator must drive the original tunnel, adit or open cut upon a claim 10 feet further than it is at the time of relocation. Here, again, the testimony is in conflict. Plaintiff's witness McNally testified that in 1938 "some fellows from Kernville by the name of the James Brothers" had a man by the name of Harvey Clark doing some assessment work for them on Paloma Ridge and that the hole on Baro 1 was the Clark hole, except that it was wider. Other witnesses testified that there was an apparently abandoned cut where the Baro 1 excavation is now located. However, defendant and Swartout both testified that they dug the Baro 1 excavation in virgin soil, and that there is another old, abandoned hole about 75 to 100 feet north and west from defendant's excavation on this claim. There was no testimony as to who dug the abandoned hole, the only other indication of human activity on the ridge, but defendant's position is that it is the James or Clark hole dug in 1938. The conflict in testimony relating to the Baro 1 excavation was resolved by the trial court in favor of defendant. ▮▮ The question of whether location and discovery work and assessment work on mining claims has been properly accomplished, in compliance with the requirements of the law, is a question of fact to be decided by the jury or by the court, if the court is the

trier of facts. (*California Dolomite Co.* v. *Standridge,* 128 Cal.App.2d 635, 639 [275 P.2d 823]; *B & B Sulphur Co.* v. *Kelley,* 61 Cal.App.2d 3, 8-9 [141 P.2d 908]; *Ehrhart* v. *Bowling,* 36 Cal.App.2d 503, 511 [97 P.2d 1010]; *Big Three Mining & Milling Co.* v. *Hamilton,* 157 Cal. 130, 135 [107 P. 301, 137 Am.St.Rep. 118].)

The third prong of plaintiff's argument is that defendant's location on Baro 2 was invalid because he failed to record a statement of performance of discovery work within 90 days after posting his notice of location on the claim, as required by section 2313 of the Public Resources Code. Although the original recorded notice of location did fail to state that the discovery work had been performed, both defendant and Swartout testified that the discovery work was accomplished timely. Defendant recorded an affidavit curing the defect in May of 1956, more than two years prior to the time plaintiff located his claim. In *Ehrhart* v. *Bowling, supra,* 36 Cal. App.2d 503, the prevailing plaintiff had worked his claims for years, though not to a great extent. The lines of his claims included an excessive area. Defendants were well acquainted with him and knew that he had located and was endeavoring to develop his claims, but nevertheless, attempted relocation thereof. The court held that, having actual knowledge, defendants could not attack the locations on technical grounds, stating at page 508: "It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, relocate the land because of technical defects in the making of the location."

To the same effect are *Pease* v. *Johnson,* 106 Cal.App.2d 449 [235 P.2d 229], where the technical defect was failure to post a proper location notice at the point of discovery and improper location of a discovery shaft; and *MacDonald* v. *Midland Mining Co.,* 139 Cal.App.2d 304 [293 P.2d 911], where recordation of an amended location notice prior to relocation was held to cure defects in the original recorded notice. ▪ In *MacDonald* the appellate court adopted, as part of its opinion, an extremely well-reasoned and scholarly memorandum opinion of the trial court, which discussed and construed the effect of sections 2307, 2304 and 2310 of the Public Resources Code. The gist of that discussion is that, reading the sections together, no forfeiture takes place where the senior locator corrects his defects (whatever they may be) *prior* to the time a junior relocator has made his relocation.

The principles there expressed are applicable here. In our case defendant cured any defect in his original notice more than two years prior to plaintiff's relocation. The trial court properly determined that no forfeiture took place and plaintiff, having both actual and constructive knowledge of the location by defendant, may not now avail himself of technical defects, if any, in the making of the location as to defendant's Baro 2.

### Annual Assessment Labor

Plaintiff next contends that defendant failed to comply with the provisions of section 2314 of the Public Resources Code and with mining laws of the United States requiring annual work on each claim of the value of $100. Counsel for plaintiff properly concedes the general rule to be that, as against an adverse claimant, failure to do annual assessment work will not, standing alone, work a forfeiture of a mining claim. The test is whether assessment work has been resumed on the mining claims prior to relocation thereof. (*Clarke* v. *Mallory*, 22 Cal.App.2d 55 [70 P.2d 664]; *MacDonald* v. *Midland Mining Co.*, *supra*, 139 Cal.App.2d 304.) In this connection it should be noted that at the time plaintiff's counsel prepared his briefs, he was laboring under the erroneous impression that Public Law 85-736, 72 Stat. 829, effective August 23, 1958, which amended title 30, section 28, of the United States Code Annotated, extended the so-called mining year from 12 o'clock meridian July 1, 1957, to 12 o'clock meridian September 1, 1958. However, the amending statute, in express terms, extended the mining year from 12 o'clock meridian July 1, 1958, to 12 o'clock meridian September 1, 1959. Counsel discovered his error and, with leave of this court, filed an additional memorandum at the time of oral argument. The record shows that the true effect of the amendment was called to the attention of the trial court. It is also set forth in defendant's brief on this appeal. Due to the erroneous belief of plaintiff's counsel at the time of preparing his briefs, he addressed his arguments relating to the nature and extent of assessment work accomplished to the year 1956-1957, with which we are not concerned. The crucial question is whether defendant performed annual labor for the period commencing at 12 o'clock meridian July 1, 1957, and ending at 12 o'clock meridian July 1, 1958, the assessment year immediately preceding plaintiff's attempted relocation.

It is provided by section 2315 of the Public Resources Code that the recordation of proof of annual assessment work is

prima facie evidence of the performance of annual labor. Defendant introduced in evidence the recorded originals of five proofs of annual labor, covering yearly assessment work from his location in 1953 through the assessment year 1957-1958. The proof of labor for the year under consideration is dated August 28, 1957, and states the required work was performed between July 3, 1957, and August 20, 1957. Both defendant and his witness Swartout testified they went on the claims about July 4, 1957, stayed 10 or 12 days, did rehabilitation work on the excavations and monuments, removed overburden and explored the vein. Swartout's work, even though it may have been done gratuitously and even though he may have had no enforceable interest in the claims, was properly attributed to the required assessment work of defendant. (*Anderson* v. *Caughey*, 3 Cal.App. 22 [84 P. 223].) Plaintiff's witnesses testified to their conclusions that there was little, if any, visible assessment work, and that such work as was visible would not amount to $100 for each claim for each year.

 The law places the burden upon a subsequent locator to prove the failure of a prior locator to do required work (*Sampson* v. *Page*, 129 Cal.App.2d 356 [276 P.2d 871]); and the proof must be clear and convincing (*Betts* v. *Stephenson*, 100 Cal.App.2d 361 [223 P.2d 651]), since the law does not favor forfeitures. There was no error in the trial court's implied finding that the plaintiff failed to overcome the presumption created by the recorded proof of annual assessment work, aided by affirmative defense testimony.

We have carefully considered plaintiff's remaining arguments relating to discovery and assessment work and find them to be devoid of merit. For example, he argues that defendant's discovery excavations were referred to throughout the trial as "holes," and seems to feel that the designation makes them invalid since the code, in specifying permissible types of excavations, does not include "holes." The label "hole" was attached to the discovery work by both counsel, both parties, witnesses, mining experts and the trial court, without objection. The excavations are also variously designated in the transcript as "open cut," "cut," "shaft" and "core rail holes." The appellation given to the excavations cannot operate to change their validity to invalidity.

Plaintiff's argument that the court erroneously predicated judgment solely on the testimony of defendant's expert witness, Harry Parker, based on the court's statement that it was impressed with the testimony of Mr. Parker, is without

merit in the light of the record as a whole, and requires no further discussion.

### Failure to Find as to Barite Star 1

Plaintiff next contends that the court erred in failing to make a finding that Barite Star 1 was owned by plaintiff, and finding instead that plaintiff shall take nothing by reason of his complaint.

It is well settled in California that in a nonjury trial, waiver absent, findings are required upon all material issues presented by the pleadings and the evidence. A judgment rendered, without making such findings, must be reversed. (*Beebe* v. *Richards*, 115 Cal.App.2d 589 [252 P.2d 688]; *Severance* v. *Knight-Counihan Co.*, 29 Cal.2d 561, 576 [177 P.2d 4, 172 A.L.R. 1107].) The allegation of ownership of all four Barite Star claims contained in plaintiff's complaint and the denial of that allegation in defendant's answer framed the issue of ownership of Barite Star 1. In fairness to the court below, it should be noted that the only issue preserved by the pretrial order, which superseded prior pleadings (*Baird* v. *Hodson*, 161 Cal.App.2d 687 [327 P.2d 215]) was: "... Whether defendant's three claims ... were valid and existing claims at the time plaintiff started location proceedings on his four claims"; that at the commencement of trial the court was advised by plaintiff's then counsel that Barite Star 1 was not in dispute, and the case was tried as to the validity of defendant's three claims at the time plaintiff located thereon. On two occasions, plaintiff requested special findings, but failed to include therein a requested finding as to ownership in plaintiff of Barite Star 1. Thus, the only question to be answered by the court upon trial was the validity of defendant's three claims. The findings and judgment answer that question and this is all the court was required to do. Plaintiff should not now be heard to complain. However, at oral argument defendant voluntarily consented that the findings and judgment be modified. Since this court can determine, from the face of the record, the correct judgment, modification seems proper in order to avoid the possibility of future litigation. The findings and judgment should be corrected to quiet title in plaintiff to that portion of Barite Star 1 which is not superimposed upon defendant's Baro 1.

### Motion for New Trial

Plaintiff charges that the court erred in denying his motion for a new trial. An order denying a motion for a new trial is

nonappealable (Code Civ. Proc., § 963; *Rodriguez v. Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907]) and is reviewable only through an appeal from a judgment (*Hamasaki v. Flotho*, 39 Cal.2d 602, 608 [248 P.2d 910]). Plaintiff's motion was made on four grounds, but proceeded primarily on the ground of newly discovered evidence. The gist of any alleged new material contained in the supporting affidavits is that, following trial, plaintiff searched the recordings in Tulare County and for the first time learned that one George James, of Kernville, was the original locator of the claim now known as Baro 1; that James and one Harvey Clark made the excavation which defendant invalidly adopted as his own discovery work on that claim; that Clark died prior to trial; and that James could not have been located with due diligence prior to trial. It must be remembered that plaintiff's first witness, McNally, testified on April 28, 1960: ". . . some fellows from Kernville by the name of James Brothers . . . had a man in there by the name of Harvey Clark. . . . He was digging out a hole. . . ." Plaintiff had the opportunity to produce testimony as late as December 2, 1960. This can hardly be classed as newly discovered evidence.

The judgment is affirmed with the following directions: The trial court is directed to make such additional findings and judgment respecting the portion of plaintiff's Barite Star 1 which does not extend into the area covered by Baro 1 as it deems the evidence warrants. If the trial court finds it necessary, it may take additional evidence as to such portion.

Defendant shall recover his costs on appeal.

Conley, P. J., concurred.

Stone, J., deeming himself disqualified, did not participate.