243 P.2d 771

**VALLEY NAT. BANK OF PHOENIX v. SIEBRAND et al.**

**No. 5373.**

Supreme Court of Arizona.

April 28, 1952.

Rehearing Denied May 20, 1952.

Phil J. Munch, of Phoenix, for appellant.

Wilson & Wilson, of Phoenix, for appellees.

LA PRADE, Justice.

This appeal is prosecuted by the Valley National Bank, in its capacity as Arizona

Administrator of the Estate of John J. Siebrand, deceased, which, as plaintiff below, brought an action in replevin to recover possession from defendants of certain personal property (automobiles, trucks and circus equipment) in their possession and for damages for its unlawful use and detention, alleging and claiming that the property belonged to the estate of its intestate and that it was subject to administration in the Superior Court of Maricopa County. Defendants denied ownership and right of possession in plaintiff and affirmatively alleged that they were the owners of the property and entitled to possession in that they had purchased the property under court orders from the duly appointed special administrator of the estate of the deceased appointed by the probate court of the state of Minnesota in Nobles County. Evidence at the trial fully sustained these allegations. After trial, judgment was ordered for defendants without any findings of fact or conclusions of law. From this adverse judgment and the order denying a new trial plaintiff prosecutes this appeal.

The deceased, at the time of his death July 5, 1948, was temporarily in the state of Idaho and there had with him the property herein attempted to be replevined. Letters of special administration were issued by the Minnesota court on July 22, 1948. The petition seeking letters of special administration in Minnesota alleged that deceased was a resident of Round Lake, County of Nobles, State of Minnesota, and was signed and filed by a sister of the deceased. Letters were issued, after which the special administrator petitioned for leave to sell which was granted. Sale was made to these defendants, report thereof made and confirmed by court order.

The unverified petition for letters in Arizona was signed by Phil J. Munch, as Attorney for Petitioner, one Gertrude Siebrand, and filed October 22, 1948, wherein it was alleged she was the surviving spouse. At the hearing on the petition she was sworn and testified and letters of administration were directed to issue to her. Gertrude failed to qualify, signed a resignation and nominated plaintiff which was thereafter on November 12, 1948 appointed and qualified. In this petition Gertrude alleged that deceased was a resident of Maricopa County and left estate, personal property (describing same) in the county, and that the next of kin were "Gertrude Siebrand, surviving spouse * * * and Richard John Siebrand, son aged six, residing at Round Lake, Minnesota". These letters were not sought by Gertrude on the claim that she was a creditor but rather upon the ground that she was the surviving wife.

At the trial by consent and without objection, inquiry was made into the question of the domicile of deceased at the time of his death. The evidence of plaintiff was furnished by Gertrude Siebrand who, on cross-examination, admitted that she was not married to John Siebrand but had lived.

with him as his wife from February 1947 until his death (July, 1948). She testified that when he entered the hospital in Idaho Falls, Idaho, during his last illness he gave his address as 2307 East Van Buren, Phoenix, Arizona, and that she lived with him as his wife at that address "in the wintertime when the show was here". The circus show was quartered during the winter months on a vacant lot at the above address where the deceased and Gertrude lived in a trailer house on the premises. In addition to the testimony of Gertrude, plaintiff offered documentary evidence consisting of title certificates to the trucks and trailers upon which Mr. Siebrand's address appeared as "2307 East Van Buren Street, Phoenix, Arizona". The address shown on these title certificates and upon a conditional sales contract was a mailing address and not a declaration of legal residence or domicile.

Evidence was introduced by defendants in support of their contention that John J. Siebrand was domiciled in Minnesota. Their evidence disclosed that when deceased entered the Navy in December, 1943, he gave his residence as "Round Lake, Minnesota". A marriage certificate evidencing marriage to Dawna Speth at Las Vegas, Nevada, September 26, 1941, gave his residence as Round Lake, Minnesota. A power of attorney executed by deceased in September, 1944 gave his residence as Round Lake, Minnesota; his separation papers from the U. S. Naval Service on April 11, 1945, gave Round Lake, Minnesota as his permanent address for mailing purposes. Deceased's immediate family at the time of his death consisted of his son, mother, two brothers and two sisters, all residents of Round Lake, Minnesota. He had been divorced from his wife Dawna. Shortly before his death, his mother and son had joined him in Phoenix to accompany him on the summer tour with the carnival, and they were with him in Idaho when he died. The uncle and brother of deceased testified that he was a resident of Round Lake, Minnesota, and no oral or written testimony was offered declaring his intention to change his domicile. The evidence of plaintiff merely showed that John J. Siebrand used 2307 East Van Buren Street, Phoenix, Arizona, as the mailing address for his carnival business and that he spent several months of each year there while the carnival was in winter quarters. In the absence of any finding of fact on the point, we do not know whether the trial court concluded this evidence failed to meet the burden of proof on plaintiff to show that the deceased was a resident of Arizona at the time of his death or concluded that he was a resident of Minnesota.

### Assignments of Error

1. In the absence of findings of fact, appellant has assumed that the trial court gave full faith and credit to the order of sale made by the Minnesota court and asserts that in this respect the court was in error.

2. That the court erred in rendering judgment for defendants thus ignoring the force and effect of the order of the probate division of the Superior Court of Maricopa County appointing plaintiff as administrator upon the ground that deceased was a resident of Maricopa County and thus in effect allowing a collateral attack upon such order.

3. That the judgment was contrary to the law and evidence in that the evidence conclusively showed the deceased at the time of his death was a resident of Maricopa County.

Plaintiff's Assignments of Error 1 and 2 are so interrelated as to be dependent one upon the other and for that reason will be treated as one. From our recitation of the trial procedure, it would seem that plaintiff proceeded on the theory that it was incumbent upon it to demonstrate that the Minnesota court had no jurisdiction. Its evidence on this point showed (1) that the property of the deceased was not in Minnesota at the time of decedent's death nor was it ever physically brought within the state of Minnesota, and (2) that the deceased was not domiciled in the state of Minnesota. Defendants met the issue of domicile by offering evidence to prove that deceased was domiciled in Minnesota at the time of his death. Domicile alone is sufficient to give jurisdiction. Minnesota Statutes Annotated, Sec. 525.82, Venue; Beale, Conflict of Laws, Sec. 467.1.

Plaintiff, by its second assignment of error, is now for the first time insisting that the Arizona decree in probate finding that the deceased was domiciled in Arizona is res adjudicata and conclusive upon the question of deceased's domicile. A question not raised in the trial court ordinarily will not be considered on appeal and may not be insisted upon for the first time on appeal. For collection of Arizona cases, see Arizona Digest, Appeal and Error, ☜169 et seq. For that reason and in view of the equities involved, we decline to make any pronouncement as to the law applicable on this issue raised for the first time by assignment of error. We are rather disposed to treat the question of domicile as it was treated in Smith v. Normart, 51 Ariz. 134, 75 P.2d 38, 114 A.L.R. 1456, and recognize both appointments as legal regardless of the fact that it seems to be contradictory to recognize dual administrations both predicated on domicile. Prof. Beale, in his Conflict of Laws, Vol. 3, Sec. 469.2, points out that an administration may be had in a state not the domicile but recognizing that there is respectable authority to the contrary.

Smith v. Normart, supra, presented a case of dual administration. In that case, the will of the deceased had been admitted to probate in Illinois and Arizona. The Arizona executrix brought suit in Arizona to recover on a promissory note. The defendants, makers of the note, were ready and willing to pay but did not know to

whom to pay in view of the fact that the Illinois representative, who was in possession of the note, was also demanding payment. Judgment was in favor of the Arizona representative. On appeal the case was reversed upon the theory that the personal property, to-wit: the note was "localized" in Illinois and that Illinois was the appropriate jurisdiction in which the asset should be administered. It was held that title to such asset vested in the Illinois administrator representing the *appropriate jurisdiction* and that the ownership of such representative would be recognized in this jurisdiction. It was pointed out that the Illinois court had held that the deceased was domiciled at the time of his death in that state and that our court had likewise held that he was domiciled in Arizona. It was then said [51 Ariz. 134, 75 P.2d 40]:

"* * * Both having probated the will, its legality as to the personal estate elsewhere is doubly established, but the proponents of the will for probate in the Illinois court and the representative appointed thereunder are not bound on the existence of the domicile as found by the Arizona court, nor are the Arizona proponents and personal representative bound by the findings of the Illinois court in that respect." (Citing Beale's Conflict of Laws, Vol. 3, Sec. 469.1 and cases.)

The court then concluded that regardless of what the facts might be as to the domicile that it should proceed in the disposition of the case on the idea that both claimants were legally personal representatives of the deceased. In the instant case the defendants being purchasers from the Minnesota administrator are in privity with him and thus it may be said the Arizona claimant is a legal representative and the defendants as purchasers represent the other legal representative.

Prof. Beale, in his work on Conflict of Laws, Vol. 3, Sec. 471.1, under the title of "Collection of Chattels and Claims", says:

"The courts from time to time have played with three somewhat contradictory notions, no one of which seems to have been consistently followed through:

"1. That the domiciliary representative as universal successor is vested with title to all the personal estate.

"2. That the dominant policy of the forum is to protect local creditors (and perhaps local distributees) whenever it is within the power of the courts of the forum to do so.

"3. That various kinds of personal property have, in the development of Conflict of Laws principles, come to be recognized as 'localized' in some one appropriate jurisdiction, in which the asset vests in the local administrator appointed in such appropriate jurisdiction; that the ownership in such administrator will be recognized in other jurisdictions."

The author quotes the rule under "notion 1", supra, from Wilkins v. Ellett, 9 Wall. 740, 743, 19 L.Ed. 586, as follows:

"* * * The original administrator, therefore, with letters taken out at the place of the domicil, is invested with the title to all the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue, according to the law of the place, or directions of the will, as the case may be."

■ Appellant is now insisting that we should follow "notion 1", supra, and hold that the domiciliary representative as universal successor is vested with the title of all of the personal estate of the deceased and that by virtue of the Arizona decree in probate that personal representative is the only domiciliary representative. Having determined that the case should be disposed of upon the theory that both representatives were legally appointed, we are thus precluded from following the rule stated in "notion 1".

■ Admitting the propriety of the dominant policy of the forum of protecting local creditors and distributees, as stated in "notion 2", it occurs to us that there is no occasion to invoke such policy here for the reason that the record discloses that there are no creditors or distributees in Arizona. The child of the deceased was domiciled and a resident of Round Lake, Minnesota, at the time the estate was there probated and on the petition for appointment of the special administrator in the Minnesota court was named and listed as an heir of the decedent. Presumably his rights were acknowledged and protected in that proceeding. The petition in the instant case was issued at the request of Gertrude Siebrand who in that document described herself as the wife and surviving spouse of the deceased but on cross-examination admitted that she was *not* married to the deceased and that her true name was *Gertrude Davis*. It is thus apparent that there is no impelling reason why we should invoke the rule of the dominant policy of the forum to protect local creditors and perhaps local distributees. There being no occasion to invoke this rule, there then appears to be no reason why Arizona should not acknowledge the Minnesota decree and give full faith and credit to its judgment and orders. By extending full faith and credit to the Minnesota decree it appears that these defendants legally and regularly acquired title to the property here sought to be replevined and that they are the owners and entitled to possession of the property. In view of this situation, claimant cannot recover for, in a replevin action, the plaintiff must recover on the strength of his own title and right of possession and not on the weakness of that of his adversary. Valley Chevrolet Co. v. O. S. Stapley Co., 50 Ariz. 417, 72 P.2d 945. The weakness or want of title was not in the defendants but rather in the plaintiff.

▆ Having seen fit to acknowledge the legality of both probate proceedings, appellant's third assignment of error, to the effect that the evidence conclusively showed that deceased at the time of his death was domiciled in Arizona, presents no issue requiring determination. But we pointed out that plaintiff at the trial, not having relied upon the asserted conclusiveness of the Arizona probate decree establishing the domicile of the plaintiff to be in Arizona, must be bound by any finding that the trial court might reasonably have made on the question of domicile since that was the issue presented for determination. Plaintiff is precluded in this court from claiming that the inquiry into the question of domicile was irrelevant and immaterial and constituted a collateral attack upon the Arizona decree in probate finding that the deceased was domiciled in Arizona. The evidence, as delineated herein, demonstrates that there was evidence from which the court might reasonably have found that the deceased was domiciled in Minnesota. Every finding necessary to support the judgment and the correctness of such findings, if sustained by any evidence, must be presumed. Warren v. Mosher, 31 Ariz. 33, 250 P. 354, 49 A.L.R. 1311; May v. Sexton, 68 Ariz. 358, 206 P.2d 573. The case having been tried on the issue of the relevancy of domicile, it is our duty, as an appellate court, to construe the evidence in the light most favorable to a sustaining of the judgment of the lower court. MacDonald v. Cluff, 68 Ariz. 369, 206 P.2d 730; Smith v. Smith, 71 Ariz. 315, 227 P.2d 214, 215. It is also the well-established rule of this court that if there is any reasonable evidence to support the judgment of the trial court, its judgment will not be disturbed on appeal. Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435.

▆ The evidence fairly demonstrates that the deceased was domiciled in Minnesota at the time he entered the United States Navy and likewise that he was so domiciled when he was discharged in April, 1945. The place of his domicile at his death in July, 1948 was the question in issue. In this behalf the evidence discloses that during the three years after his discharge from the Navy and prior to his death he was a traveling showman, spending 9 months of each year in 7 or 8 states prosecuting his circus business. In addition to the evidence herein recited as to the domicile of deceased at the time of his death, his brother and uncle who were interested in and associated with him in the business in which he was engaged at the time of his death both testified that the deceased was domiciled in Minnesota and had repeatedly made statements to the effect that his permanent residence was Minnesota.

It is the rule that:

"A domicil once established continues until it is superseded by a new domicil." Restatement, Conflict of Laws, Sec. 23.

It is also the rule that:

"The burden of proof is on one asserting that an earlier domicile was abandoned in favor of a later one * * * and is not sustained by showing a period of winter residence * * *." Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817, 121 A. L.R. 1179.

Considering the evidence and the rules applicable for the determination of domicile and assuming that the trial court found adversely to plaintiff on the question of domicile, such finding cannot be disturbed in view of the fact that there was evidence reasonably supporting such a finding.

For the reasons stated, the judgment is affirmed.

UDALL, C. J., and STANFORD, PHELPS, and DE CONCINI, JJ., concurring.